PRITCHARD PETROLEUM CO., RESPONDENT, v. FARMERS
CO-OP. OIL & SUPPLY CO., OF CONRAD, ET AL.,
APPELLANT.
SAME v. FARMERS CO-OP OIL & SUPPLY CO.,
OF CONRAD.
No. 8448
Submitted February 14, 1945. Decided June 2, 1945.
161 Pac. (2d) 526

468

Mr. R. W. Doyle, of Conrad, and Mr. Albert H. Angstman, of Helena, for appellants.

Mr. H. Norskog and Mr. G. G. Harris, both of Great Falls, for respondent.

HONORABLE WILLIAM R. TAYLOR, District Judge (sitting in place of Justice Angstman, disqualified), delivered the opinion of the court.

By permission of this Court appeals were consolidated from judgments made and entered in favor of plaintiff in two separate and distinct cases tried at the same time before the district court sitting without a jury. Both actions were brought to quiet title to cylindrical storage tanks. Pritchard Petroleum Company, a corporation, is the plaintiff in each of the cases. In the action involving the title to two 12000 gallon capacity tanks, referred to as vertical tanks, the Farmers Co-operative Oil and Supply Company of Conrad, Montana, a corporation, and Farmers Union Elevator Company of Ledger, Montana, a corporation, are parties defendant, and in the action involving the title to two 15000 gallon capacity tanks, referred to as horizontal tanks, only the Farmers Co-operative Oil and Supply Company of Conrad, Montana, a corporation, is party defendant.

D. M. Pritchard, wife of Griff Pritchard, from March, 1928, until April 17, 1931, was the owner of tract of land in Conrad, Montana, upon which she and her husband from March, 1929, until April 17, 1931, conducted a wholesale business of distributing gasoline, distillate, lubricating oils and greases, and on the latter date, April 17, 1931, the said tract of land was conveyed by D. M. Pritchard and Griff Pritchard to the Pritchard Petroleum Company, a corporation, organized in

the State of Montana in April, 1931, by Griff Pritchard, and said corporation continued to operate said business and to retail the sale of said products under the management of Griff Pritchard until sometime in 1932 and thereafter for short periods during the years 1933 and 1934.

On May 3rd, 1929, D. M. Pritchard entered into a conditional sales contract with the Brown Sheet Iron and Steel Works of St. Paul, Minnesota, for the purchase of two cylindrical storage tanks each having a capacity of 15000 gallons together with steel supports upon which the tanks were to be placed and necessary piping and valves required for their use in such business. By the terms of said contract the legal title and right of possession of said tanks and equipment used in the operation of said tanks and the supports upon which said tanks were set remained in the vendor, Brown Sheet Iron and Steel Company, until fully paid for. In addition said agreement provided that in the event that D. M. Pritchard failed to pay any of the payments when the same became due that the balance remaining unpaid should then become due immediately and that the Brown Sheet Iron and Steel Company could then enter upon the premises and search for said equipment and take possession of said equipment with or without any legal process and that for its acts in doing so the said Brown Sheet Iron and Steel Company should be subject to no proceedings civil or criminal. The last payment as provided by the agreement was to be made on January 1, 1930. The tanks were delivered as agreed and were placed upon the tract of land owned by D. M. Pritchard and used in connection with the business conducted by D. M. Pritchard. The tanks were set in a horizontal position on steel frame supports described as cradles or trestles which in turn were set upon cement piers imbedded in the ground and pipes were connected to said tanks and to pumps located on said tract in order to operate the business conducted by D. M. Pritchard.

Griff Pritchard testified that at the time of the creation of the Pritchard Petroleum Company, a bill of sale was executed

by D. M. Pritchard whereby her title to the tanks was transferred to the company. The bill of sale was not produced. At the time of trial, however, Griff Pritchard produced the notes that had been given to the Brown Sheet Iron and Steel Company by him as agent for his wife, D. M. Pritchard, at the time the conditional sales contract was entered into and he explained that the notes had been returned in October, 1933, as part of the consideration passing from the Brown Sheet Iron and Steel Company to the Pritchard Petroleum Company in compromising the account owned by the Pritchard Petroleum Company and at which time property of the Pritchard Petroleum Company at Fairfield, Montana, was transferred to the Brown Sheet Iron and Steel Company. Previous to the trial Griff Pritchard's deposition was taken and no mention made by him at that time that he possessed the notes. Neither did he mention having possession of the notes in December, 1934, when the tanks were repossessed by a representative of the Brown Sheet Iron and Steel Company. The ledger records of the Brown Sheet Iron and Steel Company introduced in evidence established that on December 31, 1933, $1,850 was credited to the notes receivable account of D. M. Pritchard and that on said date said account had been closed out through charge-offs through loss account. The credit manager and auditor for the Brown Sheet Iron and Steel Company at the time of said transaction testified from personal knowledge and the records kept by him as bookkeeper of said company that the account owed by Pritchard Petroleum Company and the notes in question given to the company by D. M. Pritchard were never paid.

In addition to the two horizontal tanks purchased from the Brown Sheet Iron and Steel Company, D. M. Pritchard owned two 12000 gallon capacity tanks which were located on the same tract of land. That said tanks being set in an upright position upon a gravel base which was five or six inches in depth. All of the tanks in question were connected by pipes

to pumps and were used in conducting the wholesale and retail selling of gasoline and distillate.

Each of the horizontal tanks was 11 feet in diameter by 21 feet in length, was constructed with 3/16 inch steel and weighed 8312 pounds. In addition the steel supports or cradles upon which the horizontal tanks were placed weighed 2300 pounds. The vertical 12000 gallon capacity tanks were constructed of similar steel, were 11 feet in diameter by 17 feet in length and weighed approximately four tons.

In December, 1934, E. H. Volreath, a representative of the Brown Sheet Iron and Steel Company informed Griff Pritchard that he intended to repossess the two tanks sold by his employer to D. M. Pritchard for the reason that the contract had not been performed by the purchaser, and he consulted the county attorney of Pondera County concerning his right to do so. Volreath was advised by the county attorney that taxes due upon the tanks and property of Pritchard Petroleum Company would have to be paid before the tanks could be removed. The taxes were subsequently paid by check mailed from St. Paul by the Brown Sheet Iron and Steel Company. Thereafter and during the latter part of December, 1934, Volreath moved the two horizontal tanks from the tract of land owned by Pritchard Petroleum Company and on to an adjoining tract of land leased by Farmers Co-operative Oil and Supply Company, and on the 2nd day of January, 1935, contracted to sell said tanks to the Farmers Co-operative Oil and Supply Company. A check in payment of the tanks was given by the Farmers Co-operative Oil and Supply Company on January 17, 1935.

The real estate owned by the Pritchard Petroleum Company and upon which said tanks had been affixed was struck off to Pondera County for delinquent taxes and on January 26, 1935, N. C. Beim as Receiver of Brown Sheet Iron and Steel Company purchased the tax certificate title to the property from Pondera County. Notice of application for tax title was given, tax title was obtained about April 1, 1935, and on April 6,

472

1935, N. C. Beim as Receiver of the Brown Sheet Iron and Steel Company of St. Paul, Minnesota, sold said tract of land to the Farmers Co-operative Oil and Supply Company.

On November 9, 1939, Farmers Co-operative Oil and Supply Company filed an action in the district court in and for the county of Pondera to quiet title to said tract of land, and the Pritchard Petroleum Company filed a separate answer and cross complaint in said action to quiet its title to the tract and thereafter on February 9, 1942, judgment was entered in favor of the Pritchard Petroleum Company quieting its title to said tract. The delinquent taxes paid by the Farmers Co-operative Oil and Supply Company were tendered and repaid to it by Pritchard Petroleum Company.

The two vertical tanks were removed from said tract of land by the Farmers Co-operative Oil and Supply Company to a similar station owned by it at Ledger, Montana, in April, 1935, and following the delivery of the deed to said premises to it by the receiver of the Brown Sheet Iron and Steel Company. In the fall of 1935 the two horizontal tanks were returned to the tract of land owned by the Pritchard Petroleum Company and believed by the Farmers Co-operative Oil and Supply Company to be owned by it, two similar horizontal tanks were also placed upon the tract of land, the buildings were repaired, enlarged and improved, new gasoline pumps were installed and the premises were thereafter used for a period of approximately five years by the Farmers Co-operative Oil and Supply Company in its operation of the selling at retail of gasoline, distillate, oils and greases.

In November, 1941, following the filing of the actions to quiet title to said tract of land and prior to the entry of judgment in favor of the Pritchard Petroleum Company to the said tract, the four horizontal storage tanks placed on the tract by the Farmers Co-operative Oil and Supply Company were removed by the said Farmers Co-operative Oil and Supply Company to an adjoining lot or tract owned by it and situated about 30 feet distance from their previous location. The con-

nection by piping to the pumps on said tract were maintained and the Farmers Co-operative Oil and Supply Company continued to operate their business and to use the retail pumps and other equipment on the tract of land owned by the Pritchard Petroleum Company until May, 1942, at which time the Farmers Co-operative Oil and Supply Company removed the pumps, pipes, meters, valves and other equipment used in connection with said business on to the adjoining tract of land owned by it and upon which the horizontal tanks had been placed.

Pritchard Petroleum Company then filed the above cases to quiet title to the four storage tanks in question and to the two horizontal tanks also placed on the premises in November, 1935, by the Farmers Co-operative Oil and Supply Company. The lower court rendered judgment in favor of the defendant Farmers Co-operative Oil and Supply Company as to the two horizontal tanks owned by it and placed upon the premises in November, 1935, and no appeal was taken from such judgment. In each of the cases the lower court rendered judgment in favor of the plaintiff, Pritchard Petroleum Company, by quieting title in it to the two vertical tanks and the two horizontal tanks herein referred to. The appeals are from judgments rendered.

In addition to the aforesaid evidence, plaintiff introduced the abstract of title to the real property upon which the tanks in question were affixed and in the abstract is shown a real estate mortgage from the Pritchard Petroleum Company to Edward Jones dated September 17, 1931, filed for record in the office of the clerk and recorder of Pondera county on October 19, 1931, securing the payment of a promissory note in the sum of $3750 with interest at the rate of 4% per annum. The testimony of Griff Pritchard established that the only payment made on said indebtedness was in the month after the execution of the mortgage and in the sum of $150. The evidence discloses that an action to foreclose this mortgage

was dismissed and the complaint ordered stricken from the files on March 20, 1941.

The question involved in each of the cases is whether or not the storage tanks placed upon the tract of land owned by the Pritchard Petroleum Company became affixed to the land and the property of the owner of the tract of land upon which they were placed.

Section 6669, Revised Codes, provides: ''A thing is deemed ▮ to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws.''

Such a statute is merely a rule for general guidance concerning itself more with ultimate than with probative facts. Fisher v. Pennington, 116 Cal. App. 248, 2 Pac. (2d) 518, 519; Gosliner v. Briones, 187 Cal. 557, 559, 204 Pac. 19, 20.

Section 6819, Revised Codes, reads as follows: ''When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section 6825, belongs to the owner of the land, unless he chooses to require the former to remove it.''

Section 6825, Revised Codes, provides: ''A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises.''

This Court on several occasions has stated the requirements ▮ that must be present to determine that personalty has become affixed to realty. In determining whether machinery used in the operation of a mine had become a part of the real estate this Court in the case of Montana Electric Company v. Northern Valley Mining Company, 51 Mont. 266, 153 Pac. 1017,

1018, declared: ''(1) Whether what would otherwise be personal property has become a fixture by reason of its attachment to the soil is primarily a question of intention on the part of the person attaching it; (2) the attachment in the manner indicated in our Code sections above raises a presumption that the one who made the attachment intended the thing affixed to become a part of the realty; * * * (3) as a general rule, the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment determine whether the thing attached is realty or personalty.''

In approving this case, in the case of Shipler v. Potomac Copper Company, 69 Mont. 86, 220 Pac. 1097, 1100, this Court said: ''The intention mentioned in all of these authorities is not the secret intention of the person making the annexation, but the intention deducible as a presumption of law from the character of the chattel, the manner and effect of its annexation, its adaptability to the use of the realty, the purpose to which it is put, the relation of the parties, and the policy of the law.''

In the requirement of an intention to make the article annexed a permanent accession to the land, the expression ''permanent'' does not imply that the annexation must be intended to be perpetual but rather that the article shall appear to be intended to remain fastened until worn out, until the purpose to which the realty is devoted has been accomplished, or until the article is superseded by another article more suitable for the purpose. It appears to be sufficient that it is intended to remain where placed as long as the land or buildings to which it is annexed may be used for the same purpose. 36 C. J. S., Fixtures, sec. 2, page 900.

The vertical tanks were originally installed and affixed to realty by the owner of the realty and were affixed to be used for the purpose to which the realty was devoted; the method of annexation was the usual one followed in affixing similar property and while mere juxtaposition in itself is not

sufficient to make an article a fixture, it is to be considered with the other elements required. The tanks in question each weighed approximately four tons and by their weight were held in place without the necessity of being otherwise attached and in effect were permanently resting upon the land as in the case of a building and as required by our statute to determine whether property so placed becomes a part of the realty. The requirements demanded to establish that personalty has been affixed to realty were met and the title to the two vertical tanks was correctly quieted in the plaintiff, Pritchard Petroleum Company.

The two horizontal storage tanks by reason of the agreement contained in the conditional sales contract entered into by and between Pritchard Petroleum Company and the Brown Sheet Iron and Steel Company retained their character of personal property after being installed and adapted to the purpose for which the realty was devoted and applied. Sec. 6819, Rev. Codes; M. P. Moller, Inc., v. Wilson, 8 Cal. (2d) 31, 63 Pac. (2d) 818. The tanks were legally repossessed by the agent of the Brown Sheet Iron and Steel Company and after their repossession and removal from the tract of land owned by the Pritchard Petroleum Company were legally sold to the defendant, Farmers Co-operative Oil and Supply Company.

In November 1935, under the mistaken belief that it owned the tract of land later (February 9, 1942) quieted in Pritchard Petroleum Company, the Farmers Co-operative Oil and Supply Company returned the two horizontal tanks to the said premises and continued to use the tanks in conducting its retail business of selling gasoline, distillate, oils and greases. The Farmers Co-operative Oil and Supply Company was incorporated to conduct the business in which it was engaged, and in replacing the tanks upon land it thought it owned and to be used in the business to which the tanks and land were applied and the tanks being affixed as originally placed upon the land clearly indicates that it intended to affix the tanks to the realty. The tanks were returned to said tract in good

faith under color of title and in the mistaken belief that it was the legal owner of said tract. However, there was no agreement between the Farmers Co-operative Oil and Supply Company and the Pritchard Petroleum Company that the Farmers Co-operative Oil and Supply Company could remove the tanks affixed to the realty of the Pritchard Company, and the Pritchard Petroleum Company did not choose to require the Farmers Co-operative Oil and Supply Company to remove its tanks.

The possession of said tract of land by the Farmers Co-operative Oil and Supply Company for a period of five years following April, 1935, did not create the relation of landlord and tenant and consequently the Farmers Co-operative Oil and Supply Company is not aided by Section 6825, Revised Codes.

Defendant assigns error for failure of the trial court to find that plaintiff's causes of action are barred by the provisions of section 9033, Revised Codes. Since we have held that the tanks became a part of the realty, as fixtures, this section is not applicable. Neither does the record establish abandonment of the property involved by the plaintiff, nor such laches as would bar plaintiff's causes of action.

The lower court correctly also quieted title to the two horizontal tanks in the plaintiff, Pritchard Petroleum Company.

The judgment in each of the cases is affirmed.

Mr. Chief Justice Johnson, and Associate Justices Morris, Adair, and Cheadle, concur.

Rehearing denied Sept. 12th, 1945.