ROY H. SANDERS, Plaintiff and Respondent, *v.* BUTTE MOTOR COMPANY, a Corporation, Defendant and Appellant.

No. 10468

Submitted June 12, 1963. Decided September 13, 1963.

Rehearing denied October 9, 1963.

385 P.2d 263

Earle N. Genzberger (argued), Butte, for appellant.

Doepker & Hennessey, Mark J. Doepker (argued), Butte, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment entered in favor of plaintiff as a result of a jury verdict obtained in the second judicial district. Action was brought by the plaintiff, respondent here, for conversion of personal property. Butte Motor Company, hereinafter referred to as defendant since Frieda Bristow and Sadie Felger were never served and have not appeared, argued that the chattels in issue were immovable fixtures, not personal property. The trial court determined as a matter of law that the chattels were personal property and

instructed the jury accordingly. Verdict was rendered in favor of the plaintiff in the amount of $3,000. Defendant appeals.

In the fall of 1931 plaintiff entered into possession of three storerooms on the premises at 9, 11, and 13 East Galena Street, Butte. Entry had been under an oral tenancy relationship. Plaintiff immediately commenced operation of a machine shop and a little welding shop. The premises were at that time owned in common by Andy Davis and the Pincuses. Plaintiff apparently conducted all of his transactions concerning the property with an agent of the owners, a Mr. Fred Grandpre. All transactions appear to have been oral.

During 1939 plaintiff constructed a partition separating No. 9 from Nos. 11, and 13. No. 9, in essence, became a separate room from Nos. 11, and 13. The partition had been completely financed by the plaintiff and consisted of 2 x 6's nailed to the front and back walls of the building and attached to the ceiling and concrete floor by lag screws.

A Mr. Barnard became the real estate agent handling the transactions for premises Nos. 9, 11, and 13, in 1941. It does not appear in the record that the plaintiff was aware of the actual authority Mr. Barnard did have. However, the plaintiff conducted all of his business concerning these premises through Mr. Barnard, devoid of actual knowledge as to who the owners of the property were.

Around 1945, a Mr. Regan entered into possession of a store on the corner of the block. This store was part of the property owned by Mr. Davis and Mr. Pincus. On August 13, 1949, Mr. Regan and his mother acquired title to Mr. Davis' interest.

Prior to 1951, Mr. Regan orally gave his consent that the plaintiff might "fix up a little place in which to live." Because of the evasiveness of the plaintiff on cross examination it is difficult to determine the scope of consent actually given by Mr. Regan. At any rate, the plaintiff constructed a room located in the back portion of No. 9.

The apartment was constructed in the rear portion of No.

9. The apartment's floor was located about seven feet above the concrete floor and extended about fourteen feet from the back wall. The apartment's ceiling was originally that of No. 9, and three of its walls were portions of the side wall, back wall and partition wall of No. 9. The apartment was entered by a cellar type of stairs located near the back wall of No. 9. Illustration A is a three dimensional view for clarity sake.

**Illustration A**

The apartment's dimensions are as the diagram indicates 13 feet 9 inches by 13 feet 6 inches by about 7 feet. The floor was constructed by 2 x 8 stringers attached to the side wall and partition with sixty penny nails, i. e., a spike about 8 inches long.

The plaintiff considered this room as his "little apartment", which had been financed solely by the plaintiff. It had been

completed in the Fall of 1951 at which time the plaintiff commenced living in it. There was no written lease or agreement concerning the occupancy of this room. Again, the testimony of the plaintiff is vague and indefinite as to what oral agreements existed between Mr. Regan and plaintiff concerning this space, if in fact, any did exist.

The defendant acquired title to the one-half interest of the property owned by Mr. Regan and his mother on July 10, 1952. Prior to this time the Pincus' interest had been inherited by two daughters, Frieda Bristow and Sadie Felger.

In February 1954, plaintiff caused the machinery of his machine shop to be moved out. From the record it appears that plaintiff had been paying $42.50 rent monthly prior to the construction of the little apartment. After the construction of the apartment, plaintiff commenced paying $42 rent for the whole works and $20 rent for the little apartment. When plaintiff gave up the operation of his machine shop he continued renting the little apartment only.

On June 27, 1956, plaintiff was informed by letter that the defendant desired him to move. Plaintiff countered that he would move only when he was paid a sum of money, presumably as compensation for the expenses he had expended for the construction of the little apartment and other improvements made over the years. The defendant refused to pay the sum asked. Several times during the following years the plaintiff was asked to move, but he consistently refused. Finally around June 1, 1959, a notice of termination of tenancy and notice to quit was delivered to the plaintiff. Plaintiff admits he received the instrument.

Plaintiff had paid his rent on the 1st day of June, 1959. On June 24, 1959, the plaintiff left the premises without informing anyone, moreover the defendant, of his intentions. In leaving, the plaintiff locked the door to No. 9 and took all his personal property, cooking utensils and clothing. He alone had a key to this door. On July 3, 1959, the defendant had

a key made by which he was able to gain admission thereto. During the period of July 27 to August 10, 1959, the little apartment was dismantled and removed. Within a couple of months after the removal of the apartment the plaintiff had occasion to note that the apartment had been dismantled. On December 21, 1960, over a year later, the plaintiff filed a complaint to recover damages from the defendant for the alleged unlawful taking, converting and disposing of the property. After the plaintiff had initially been asked to move in 1956 the records show that he had talked to several people concerning the situation. These people did not appear to have any authority to negotiate any settlement however. No demand had been made on the defendant for a return of the property.

The property in issue consisted of all the material that went into the construction of this apartment, e. g., floors, doors, electric wiring, etc. At the conclusion of counsel's arguments concerning defendant's motion for a directed verdict which was denied, the trial court ruled as a matter of law that all of the items were personal property with the exception of the skylight. One of defendant's many objections to Court's Instruction No. 7 which instructed the jury "that the Court has determined, as a matter of law, that the property described in 'Exhibit A' annexed to the complaint in this action is personal property and are not fixtures," and that if they found the defendant guilty of a conversion, then they must find for the plaintiff. By this objection the defendant presents the primary question for determination: "Was the property that the plaintiff claimed the defendant converted real property, fixtures (movable or immovable), or personal property?"

The importance of this determination is observed from R.C.M. 1947, § 67-1301, which states:

"When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section 67-1307, belongs to the

owner of the land, unless he chooses to require the former to remove it."

R.C.M.1947, § 67-209, defines the term "affixed" as:

"A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent as by means of cement, plaster, nails, bolts, or screws."

Section 67-1307, R.C.M.1947, is as follows:

"A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

This court has interpreted the term "permanent" in Pritchard Petroleum Co. v. Farmers Co-Op Oil & Supply Co., 117 Mont. 467, 475, 161 P.2d 526, as:

"In the requirement of an intention to make the article annexed a permanent accession to the land, the expression 'permanent' does not imply that the annexation must be intended to be perpetual but rather that the article shall appear to be intended to remain fastened until worn out, until the purpose to which the realty is devoted has been accomplished, or until the article is superseded by another article more suitable for the purpose. It appears to be sufficient that it is intended to remain where placed as long as the land or buildings to which it is annexed may be used for the same purpose. 36 C.J.S., Fixtures, § 2, page 900."

The record does not show that there had been any prior agreement between the plaintiff and the defendant or his agent which would permit the plaintiff the right to remove the items he has listed as personal property. Thus, if the prop-

erty is found to be fixtures there is no cause of action and the cause should have been dismissed.

Deciding that an electrical hoist was not a fixture this court stated in Montana Electric Co. v. Northern Valley Mining Co., 51 Mont. 266, 271, 153 P. 1017, 1018, three criteria that must be present for the determination that a piece of property is a fixture. These criteria are:

"(1) Whether what would otherwise be personal property has become a fixture by reason of its attachment to the soil is primarily a question of intention on the part of the person attaching it; (2) the attachment in the manner indicated in our Code sections above [Revised Codes of 1907, § 4427, now R.C.M.1947, § 67-209] raises a presumption that the one who made the attachment intended the thing affixed to become a part of the realty; this presumption, however, is a disputable one; (3) as a general rule, the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment determine whether the thing attached is realty or personalty." (Pritchard Co. v. Farmers Co-Op Oil & Supply Co., 117 Mont. 467, 475, 161 P.2d 526.)

The first criteria clarifies the statement we made in Eisenhauer v. Quinn, 36 Mont. 368, 373, 93 P. 38, 39, 14 L.R.A.,N.S., 435, 122 Am.St.Rep. 370, that "one of the elementary rules of the law of fixtures is that a chattel, to become an irremovable fixture, must have been annexed to the realty by the owner of the fixture, or with his consent."

Plaintiff's testimony indicates that his intention was to permanently attach the chattels to the building. Specifically on cross examination:

"Q. Now, when you built this apartment, did you intend to move the whole apartment, part and parcel, into another location? A. I intended to get my last leisure, before I died, right there."

At another place:

532

"Q. Now, did you ever ask Mr. Barnard or Mr. Schotte whether you could remove these items from the premises * * *? A. No, I never intended to remove them, and I wouldn't ask them if I never intended to move them."

Plaintiff's testimony shows clearly that he constructed the apartment with the intent of having a place to live for the remaining years of his life, that he had no intention of ever removing any of his chattels that went into the construction of the apartment. There was no agreement that the plaintiff could ever remove any of the items. The plaintiff's intended purpose for the use of the items clearly is in accord with the interpretation given the term "permanent" in Pitchard Petroleum Co. v. Farmers Co-Op Oil & Supply Co., supra.

We do not mean to intimate by the wording of the preceding paragraph that the defendant or his predecessor shared the same views or intentions as the plaintiff. Lack of trial evidence precludes an adequate appraisal of the intentions of defendant's predecessor.

The second criteria establishes the manner in which property must be attached to become a part of realty. As noted previously, section 67-209 states that "A thing is deemed to be affixed to land when it is * * * permanently attached to what is thus permanent as by means of cement, plaster, nails, bolts, or screws." In Montana Electric Co. v. Northern Valley Mining Co., 51 Mont. 266, 153 P. 1017, we held that a certain hoist had not become a fixture. In so holding we summarily stated on page 274 that the hoist could be removed without material injury to the realty or the hoist itself. That is not the case here. A review of the record clearly shows the plaintiff testifying on cross examination that many of the chattels involved were built into the apartment, that they were attached by nails, screws, cement or plaster. Plaintiff's exhibits, numbers 5 and 6, pictorially show evidence of substantial damage remaining after the removal of the apartment.

Not all of the chattels were directly annexed to the exist-

ing realty. Some of the chattels were attached to the floor, some to the partition separating the bathroom from the remainder of the apartment. A progression resulted. Initially the constituents of the floor were personal property which, when attached to the existing realty became fixtures or part of the realty. Chattels subsequently attached to the floor similarly became a fixture, assuming the other criteria for finding a chattel as a fixture are· satisfied.

The last criteria is that the chattels annexed must be adaptable to the use to which the realty is applied. In 1901, the United States Circuit Court for the District of Montana, in Bender v. King, 111 F. 60, 69, holding that certain chattels were fixtures in relation to the "Grand Opera House" of Butte, held:

"* * * It is clear from the evidence that the Grand Opera House would have been incomplete as an opera house without these chairs; and these chairs, or similar chairs, were absolutely necessary in its use and occupation for theatrical performances; and said chairs, affixed as they were [attached to the floor by screws and nails], became and were a part of the building itself * * *."

In the Bender case, the Federal Court applied the general adaptability doctrine to an instance where the building had been used for a ·specific purpose since its construction. In deciding Pritchard Petroleum Co. v. Farmers Co-Op Oil & Supply Co., 117 Mont. 467, 475, 161 P.2d 526, 531, this court reiterated what we had said in Shipler v. Potomac Copper Co., 69 Mont. 86, 94, 220 P. 1097, that:

" 'The intention mentioned in all of these authorities is not the secret intention of the person making the annexation, but the intention deductible as a presumption of law from the character of the chattel, the manner and effect of its annexation, its adaptability to the use of the realty, the purpose to which it is put, the relation of the parties, and the policy of the law.' "

The instant case is in accord with the three previously mentioned cases. No. 9 was being used as an income or rent producing room. Certainly its owners were concerned over their property, but this court assumes they were satisfied to leave the plaintiff use the premises as he saw fit, at least within limits, as long as the rent was paid. Whether No. 9 was used as a storeroom, a welding shop, a machine shop, an apartment or a combination of these was of no concern to them. Their main objective was that the property continue to produce rent. No. 9 did. The chattels added by the plaintiff did change the feature of No. 9, but did not hinder its rentability. In fact, No. 9's rentability increased. The chattels were adaptable to the use of the realty—its rent producing ability.

Assuming No. 9 was materially altered by the addition of the little apartment, in neither the Bender case, the Pritchard Petroleum Company case, nor the Shipler case was it implied that the use to which realty was being used could not be changed at some future date and that newly added chattels could not then become fixtures. The annexation of the chattels in the instant case changed the use of No. 9 from a strict storeroom or machine shop to a storeroom or machine shop and apartment. We do not consider this a material change. The apartment existed for a period of eight years. The chattels were part and parcel of this apartment, in fact, they were the apartment for without them there would be no apartment. They were adaptable to the use for which the realty had been changed and were being put to profitable use. They were fixtures.

As we have found, the items in issue here are not personal property as the trial judge found as a matter of law, rather they are fixtures or part of realty. Since there had been no prior agreement between the owners of the realty and the plaintiff, the chattels became part of the realty. The trial judge erred in not granting the defendant's motion for a directed verdict. The cause is reversed, remanded and dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN C. HARRISON and ADAIR concur.