SHIPLER, RESPONDENT, *v.* POTOMAC COPPER CO., APPELLANT.

(No. 5,317.)

(Submitted November 3, 1923. Decided November 22, 1923.)

[220 Pac. 1097.]

*Conversion—Fixtures—Evidence — Value — Estoppel —Trial— Instructions—Law of Case—Pleading and Practice—Causes of Action—Improper Joinder—Waiver of Defect.*

Pleading and Practice—Improper Joinder of Causes of Action—Special Demurrer.
    1. Where several causes of action are improperly joined, the defect cannot be reached by general demurrer, and is waived by failure to interpose a special demurrer or a motion to compel plaintiff to separately state and number them.

Conversion—Complaint—Insufficiency—Failure to Plead Ownership.
    2. In an action for conversion plaintiff must allege that he was the owner or entitled to possession of the property at the time of the alleged conversion; in the absence of such averment the pleading is fatally defective and a general demurrer thereto should be sustained.

Fixtures—Rule for Determining What are.
    3. In determining whether what would otherwise be personal property has become a part of the realty, the intention of the one an-

---

    3. Whether things placed on land with the intention of annexing them are fixtures, see notes in 4 **Ann. Cas.** 1160; 69 **L. R. A.** 892; 15 **L. R. A. (n. s.)** 727.

    Effect upon the rights of the owner of a building, or of an interest in or a lien thereon, of its wrongful removal and attachment to the land of a third person without the former's consent, see note in 14 **L. R. A. (n. s.)** 435.

nexing it to the soil is of primary importance, such intention not being his secret intention but that deducible as a presumption of law from the character of the chattel, the manner and effect of its annexation, its adaptability to the use of the realty, the purpose to which it is put, the relation of the parties, the policy of the law, or, where a contract is involved, from its provisions.

Same—Buildings and Railroad Track on Mining Claim.

4. Where a lease and option to purchase mining claims provided that in the event the lessee should conclude not to make the purchase, any permanent improvements placed upon the premises should become the property of the lessor but that the lessee should have the right to remove any machinery installed thereon by him, the latter provision *held* all but conclusive evidence that the lessee intended that buildings and a railway track should remain where they were.

Same—Presumptions—Burden of Proof.

5. A building erected upon land belongs to the owner of the land, and the burden of proof is upon him who claims that it is personal property to show that it is, the presumption to the same effect declared by section 6669, Revised Codes of 1921, being a disputable one which may be overcome by evidence that the building was constructed in such a manner or under such circumstances as to preclude the idea that it was intended to become a part of the realty.

Estoppel—Failure to Plead—Rule.

6. Where plaintiff by his pleadings discloses that he is estopped, advantage thereof may be taken by demurrer, or if by his evidence he voluntarily injects the necessary elements of estoppel into the case he cannot complain that the defense was not pleaded, or if he sits by without objecting to defendant's evidence tending to establish an estoppel, he will not be heard to say that the defense was not pleaded.

Same—Evidence of Estoppel Elicited on Cross-examination of Person Claimed to be Estopped.

7. *Quaere:* Where the defense of estoppel is not pleaded and plaintiff does not voluntarily inject its necessary elements into the case, but evidence of estoppel is elicited upon his cross-examination, may defendant claim that plaintiff was estopped by his own testimony?

Same—Estoppel by Silence—When Defense not Available.

8. To effect estoppel by silence or standing by, the silence or passive conduct must have actually misled the other party to his prejudice; hence where defendant in an action for conversion was not influenced in any degree by plaintiff's failure to protest against the removal of buildings, *etc.*, from leased property contrary to the provisions of the contract, defendant was in no position to rely on estoppel by silence.

Conversion—Evidence of Value at Nearest Market not Conclusive, When.

9. While value of property must generally be established by evidence of it at the nearest market, if fairly illustrative, nearness is not conclusive where circumstances of variation render the value at the nearest market misleading, evidence of value in the control-

---

4. When and against whom fixtures may retain their character as personal property, see note in 84 Am. St. Rep. 877.

ling market being always admissible even though a considerable dis-
tance away.

Same—Value—Improper Admission of Evidence—Harmless Error.
    10.  Where, as shown by the verdict, the jury computed the damages
    for the wrongful removal of frame buildings upon the value of
    lumber at a mill close by as testified to by appellant's witnesses,
    and not upon the higher value obtaining at a more distant market
    shown by respondent's testimony, appellant was not harmed by the
    alleged erroneous admission of the latter testimony and was in no
    position to complain.

Same—Fixtures—Air-hose on Compressor Personal Property.
    11.  Where lessee of mining property had the right to remove ma-
    chinery upon cessation of operations, an air-hose securely affixed to
    a compressor not attached to the land and indispensable to the
    operation of drills was an essential part of the compressor and
    removable.

Trial—Instructions—Law of Case Whether Right or Wrong.
    12.  The instructions to the jury, whether right or wrong, constitute
    the law of the case, and a verdict contrary to them is against the
    law.

Same—Instructions—When Verdict not Against Law.
    13.  In determining whether a verdict is against the law all of the
    instructions must be considered, and if the verdict can be justified
    by any of them, and on the whole they are inconsistent and con-
    flicting one with the other, the verdict is not against law.

*Appeal from District Court, Missoula County; John E.
Patterson, Special Judge.*

ACTION by W. P. Shipler against the Potomac Copper Com-
pany, a corporation.  Judgment for plaintiff and defendant
appeals.  Judgment ordered modified on condition that plain-
tiff file *remittitur*, otherwise cause remanded, with directions
to grant new trial.

*Messrs. Kremer, Sanders & Kremer,* for Appellant, submitted
a brief; *Mr. L. P. Sanders* argued the cause orally.

Machinery is defined to be an artificial work which serves
to apply or regulate moving power; any construction of
mechanical means designed to work together so as to effect
a given end; the combination of mechanical means to a given
end.  (*Brewer* v. *Ford,* 12 N. Y. Supp. 619; *Brower* v. *Locke,*
31 Ind. App. 353, 67 N. E. 1015; *Benedict* v. *New Orleans,*
44 La. Ann. 793, 11 South. 41.)  The air-pipe through which
compressed air was forced for the purpose of operating drills

in driving the tunnel, certainly falls within this definition. Machinery includes mechanical parts connected with a boiler and steam supply by which power is generated and applied. (*Fairbanks & Co.* v. *Cincinnati etc. R. Co.*, 81 Fed. 289, 38 L. R. A. 271, 26 C. C. A. 402; *Commonwealth* v. *Lowell Gas Light Co.*, 94 Mass. (12 Allen) 75; *City of Covington* v. *Covington Gas Light Co.* (Ky.), 2 S. W. 326.)

Plaintiff was estopped by his silence, when good faith demanded protest on his part. Thereby the defendant was victimized and led to expend a substantial sum of money and has further become involved in the expense of this litigation, all of which might have been avoided had the plaintiff asserted his claim of ownership to the improvements. Such a protest would have resulted either in abandonment by defendant of the removal of the property or continuance thereof at its peril. "Passive acquiescence estops equally with active interference. He who is silent when conscience requires him to speak, shall be debarred from speaking when conscience requires him to be silent." (*Nicholas* v. *Austin*, 82 Va. 87, 1 S. E. 132; citing *Niven* v. *Balknap*, 2 Johns. (N. Y.) 573; *Heyn* v. *O'Hagen*, 60 Mich. 150, 26 N. W. 861; *Mann* v. *Peck*, 45 W. Va. 18, 30 S. E. 206; *Anthes* v. *Schroeder*, 74 Neb. 172, 103 N. W. 1072; *Larson* v. *Anderson*, 74 Neb. 361, 104 N. W. 925; *Bates* v. *Swiger*, 40 W. Va. 420, 21 S. E. 874.)

Should it be argued that waiver or estoppel was not affirmatively pleaded in the answer, we answer that testimony establishing this defense was introduced without objection and thereby the objection to failure to plead this defense was waived. (*Flandreau* v. *Downey*, 23 Cal. 354; *Fairgate Realty Co.* v. *Drozda* (Mo.), 181 S. W. 398; *Longpre* v. *Big Blackfoot Milling Co.*, 38 Mont. 99, 99 Pac. 131; *Molt* v. *Northern Pac. Ry. Co.*, 44 Mont. 471, 120 Pac. 809.)

*Mr. Harry H. Parsons*, for Respondent, submitted a brief.

Under the statute defining fixtures to mining claims (sec. 6670, Rev. Codes 1921), it would appear that the law itself

makes the air-pipe a permanent improvement and takes it out of the category of machinery. In fact, that section specifically says so of pipes used in working or developing a mine. It is consequently real property. (*Britannia Mining Co.* v. *United States Fidelity & Guaranty Co.*, 43 Mont. 93, 115 Pac. 46; *Wheeler* v. *McIntyre*, 55 Mont. 295, 175 Pac. 892; 2 Lindley on Mines, sec. 409.) We cannot see how the pipe which was connected with the compressor on one end and with the drill upon the other could be any more machinery than an electric wire which connects a power plant at Thompson Falls and the drill machine in Butte. It is a contrivance connecting the two pieces of machinery. It will not do to. say that the drill could not be operated without the pipe any more than it would do to contend that because a railroad could not be operated without the rails, that therefore the rails would be machinery. (*Wynkoop* v. *Ludlow Valve Co.*, 196 N. Y. 324, 30 L. R. A. (n. s.) 36, 89 N. E. 827.) In this connection, while we are ourselves in some doubt about it, we think that under authority and by reason of the surrounding circumstances and the intention of the parties as gleaned from the contract this pipe was a permanent improvement and not machinery.

Appellants never pleaded estoppel—never even hinted at it in the answer. This plea is necessary before appellant may advantage himself of that doctrine. Appellant had ample opportunity to plead estoppel *in pais* had it so desired. (*Stafford* v. *Hornbuckle*, 3 Mont. 485; *Capital Lumber Co.* v. *Barth*, 33 Mont. 94, 81 Pac. 994; *City of Butte* v. *Mikosowitz*, 39 Mont. 350, 102 Pac. 593; *O'Meara* v. *McDermott*, 40 Mont. 38, 104 Pac. 1049.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In May, 1919, plaintiff and defendant entered into a contract in writing by the terms of which defendant secured a lease upon and option to purchase certain designated mining

[69 Mont. 86.]

claims in Missoula county. It went into possession and upon one of the leased claims erected a compressor and boiler building, a blacksmith-shop, a storeroom, a stable, a tunnel portal, a closet, a pumphouse, a drain cover and a water-tank. It constructed 600 feet of track, installed a boiler and compressor, laid 500 feet of air-hose for ventilating purposes and 500 feet of air-pipe to conduct compressed air to the drills. After doing considerable development work and before the expiration of the term, it abandoned the enterprise, elected not to purchase the claims, and removed all buildings, machinery and equipment which it had placed upon the property.

Immediately after the term expired, plaintiff instituted this action to recover damages, was successful in the lower court, and defendant appealed from the judgment.

1. It is insisted that the court erred in overruling the general demurrer to the complaint.

Plaintiff undertook to state three separate causes of action, but upon the trial the third cause of action was abandoned and further reference to it need not be made.

In the first cause of action, after reciting the history of the [1] transaction and making the contract a part of the pleading, plaintiff alleged that under the terms of the contract the buildings, track, air-hose and air-pipe became his property as soon as defendant elected not to purchase the claims, and that in removing them defendant was guilty of a breach of contract to his damage, *etc.* There is also the charge that defendant destroyed a blacksmith-shop and removed and converted to its own use certain personal property belonging to plaintiff. While it is true that in this first cause of action there is mingled a cause of action for damages for breach of contract and a cause of action for damages for conversion, there was not any motion made to compel plaintiff to separately state and number them, and there was not any special demurrer interposed. The defect could not be reached by general demurrer and was waived. (*Galvin* v. *O'Gorman,* 40 Mont.

391, 106 Pac. 887; *Marcellus* v. *Wright*, 51 Mont. 559, 154 Pac. 714.)

In the second cause of action plaintiff sought to recover [2] damages for other personal property wrongfully converted by defendant, but he failed to allege that he was the owner or entitled to the possession of the property at the time of the alleged conversion, and for this reason the pleading is fatally defective. The court erred in overruling the demurrer to the second cause of action and in submitting it to the jury. (*Paine* v. *British-Butte Min. Co.*, 41 Mont. 28, 108 Pac. 12.)

2. It is urged that the evidence is insufficient to sustain the [3, 4] verdict, but the argument has its foundation in an erroneous theory of the law. The contention that the particular manner of annexation and the undisclosed intention of the defendant should have controlling consideration in determining the character of the buildings and track as personalty or realty, is without merit. The contract between the parties provided that in the event the defendant did not purchase the claims "then any permanent improvements placed upon said property or any thereof, shall become the property of the said W. P. Shipler and his associates, but it is expressly understood that any machinery placed thereon or upon any portion thereof by the party of the second part shall belong to the party of the second part which shall have a reasonable time to remove the same."

The law of fixtures had its origin in the maxim "*quicquid plantatur solo, solo cedit*"—"Whatever is affixed to the soil belongs thereto." (Broom's Legal Maxims, *387.) Under that maxim annexation was the decisive test, but with the development of the law and particularly with the introduction of trade and ornamental fixtures it was found to be altogether inadequate, and was long since abandoned. In some of the early English cases the particular manner of annexation was given primary consideration. It was said that irreparable injury to the freehold by the removal of the thing annexed

was the test by which to determine that it was a part of the realty and irremovable (*Lawton* v. *Lawton*, 3 Atk. 14, 26 Eng. Reprint, 811), but that test likewise failed. While the degree and manner of annexation was a test formerly applied by the courts to determine whether a fixture was removable or not, the weight of authority now seems to regard this only as a factor in determining the intention of the parties—in fact, rather unimportant as compared with the test of the purpose of annexation or adaptability of the chattel to the use of the realty. (Bronson on Fixtures, sec. 18g; 11 R. C. L. 1060.)

In *Green* v. *Phillips*, 26 Gratt. (Va.) 752, 21 Am. Rep. 323, the court said: "It is true that many cases may be found which hold that to give chattels the character of fixtures, and deprive them of that of personalty, they must be so firmly attached to the real estate that the connection cannot be severed without breaking or otherwise injuring the freehold. But the general course of modern decision, both in England and in the American courts, is against adopting, as the criterion for determining the character of chattels as fixtures, whether the annexation to the realty be slight and temporary, or immovable and permanent, and in favor of declaring everything a fixture which has been attached to the realty with a view to the purposes for which it is held or employed, however slight or temporary the connection between them."

As illustrating further the development of this branch of the law, it is said in 26 C. J. 661: "Retention in place by gravity, without any fastening, has been not infrequently held to be insufficient, but the later cases usually regard this as sufficient, provided the intention to make the article part of the realty plainly appears and the article or structure is so heavy that it is as effectively kept in place by gravity as if it were fastened."

While a few courts apparently continue to give the test of injury by removal prominent effect, by the overwhelming weight of authority it is treated simply as a circumstance

tending to establish the intention of the parties.   (Bronson on Fixtures, sec. 18d, 1; 26 C. J. 663.)

In *Teaff* v. *Hewitt*, 1 Ohio St. 511, 59 Am. Dec. 634, the supreme court of Ohio announced these tests for determining the character of the thing annexed: "(1) Actual annexation to the realty, or something appurtenant thereto.   (2) Appropriation to the use or purpose of that part of the realty with which it is connected.   (3) The intention of the party making the annexation, to make the article a permanent accession to the freehold."   The doctrine of that case has been approved and followed by the courts of this country generally for nearly three-quarters of a century.   (11 R. C. L. 1059.)

In E'well on Fixtures, section 22, the author says: "Of these three tests the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention."

The question is not a new one in this jurisdiction.   In *Montana Elec. Co.* v. *Northern Valley Min. Co.*, 51 Mont. 266, 153 Pac. 1017, we said: "As a general rule, the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment determine whether the thing attached is realty or personalty."   We said further: "Whether what would otherwise be personal property has become a fixture by reason of its attachment to the soil, is primarily a question of intention on the part of the person attaching it."

In 1 Washburn on Real Property, section 34, the author says: "Whether a thing which may be a fixture becomes a part of the realty by annexing it depends, as a general proposition, upon the intention with which it is annexed."

The intention mentioned in all of these authorities is not the secret intention of the person making the annexation, but the intention deducible as a presumption of law from the

character of the chattel, the manner and effect of its annexation, its adaptability to the use of the realty, the purpose to which it is put, the relation of the parties, and the policy of the law (*Hopewell Mills* v. *Taunton Sav. Bank,* 150 Mass. 519, 15 Am. St. Rep. 235, 6 L. R. A. 249, 23 N. E. 327; *Hayford* v. *Wentworth,* 97 Me. 347, 54 Atl. 940; 26 C. J. 655; 11 R. C. L. 1062), and, in this particular instance, from the provisions of the contract. It is significant that in concluding the agreement defendant promised, if it did not purchase the claims, "to surrender quiet and peaceable possession of said premises and each and all of them unto the party of the first part [plaintiff] and his associates and to vacate said premises, reserving however unto itself a reasonable time within which to remove *any machinery* that shall have been installed therein or thereon by the party of the second part [defendant] during the term hereof." Since the right of removal was apparently restricted to machinery alone, it is all but conclusive evidence that defendant intended that any buildings erected by it should remain.

It has always been the rule independently of statute that, [5] *prima facie,* buildings erected upon land belong to the owner of the land, and the burden of proof is upon him who claims that they are personal property to show that they retain that character. (Elwell on Fixtures, sec. 66; 26 C. J. 670; 11 R. C. L. 1081.) That rule has been incorporated in our Codes. Section 6667, Revised Codes of 1921, provides: "Real or immovable property consists of: 1. Land; 2. That which is affixed to land," *etc.* Section 6669 provides: "A thing is deemed to be affixed to land when it is  *  *  * permanently resting upon it, as in the case af buildings," *etc.* The presumption declared by the statute is a disputable one, and may be overcome by evidence which discloses that the building was constructed in such a manner or under such circumstances as to preclude the idea that it was intended to become a part of the realty. An example of the exception is found in *Padden* v. *Murgittroyd,* 54 Mont. 1, 165 Pac. 913.

Under the theory of the law herein announced, the evidence is ample to sustain the verdict so far as the buildings and track are concerned.

3. It is argued, however, that even though title to the [6] buildings and track passed to plaintiff, he is estopped to assert his claim of ownership. The defense of estoppel was not pleaded, and it is not suggested that the opportunity to plead it was not present. It is contended that plaintiff's own testimony discloses that he should be estopped, hence the defense is available though not pleaded.

It is the general rule that, if the plaintiff's pleadings disclose that he is estopped, advantage may be taken by demurrer, or, if the plaintiff by his evidence voluntarily injects the necessary elements of estoppel into the case, he cannot complain that the defense was not pleaded, or, if he sits by without objecting and permits the defendant to introduce evidence tending to establish an estoppel, he will not be heard to say that the defense was not pleaded.

Plaintiff's pleadings do not suggest any fact that would [7] tend to estop him, and defendant did not offer any testimony upon the subject. Upon this subject the record discloses these facts and none others: On cross-examination plaintiff testified that he was present during all the time defendant was removing the buildings and tracks; that he did not object or protest to anyone; and that he could not tell why he did not object. It will be observed that plaintiff did not voluntarily produce this evidence; it was elicited upon cross-examination. (*Divine* v. *George*, 63 Colo. 341, 166 Pac. 242.) But waiving this consideration aside, the question remains: Do the facts disclosed constitute an estoppel? That they do not [8] is apparent at once. One of the indispensable elements of estoppel by silence or standing by is that the silence or passive conduct must have actually misled the other party to his prejudice. (2 Pomeroy's Equity Jurisprudence, sec. 805; Bigelow on Estoppel, 648; 21 C. J. 1154.) In 10 R. C. L. 693, the rule is stated as follows: "But to effect an estoppel

by silence it must also appear that the person had a full knowledge of the facts and of his rights; that he had an intent to mislead or at least a willingness that the other should be deceived and that the other party was misled by his attitude.''

In *Sheffield Car Co.* v. *Constantine Hydraulic Co.*, 171 Mich. 423, Ann. Cas. 1914B, 984, 137 N. W. 305, the rule is announced as follows: ''An equitable estoppel *in pais* requires, as to the person against whom the estoppel is claimed, opportunity to speak, duty to speak, failure to speak, and reliance in good faith upon such failure.''

In *Yellowstone County* v. *First Trust & Sav. Bank*, 46 Mont. 439, 128 Pac. 596, it was said: ''It is elementary that before anyone can invoke the doctrine, he must show that he was misled to his prejudice by the conduct of which he complains.'' The same principle was recognized and applied in *Cornish* v. *Wolverton*, 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4. There is not anything in this record to indicate that defendant was influenced in the slightest degree by plaintiff's failure to protest; on the contrary, the testimony of Gow, vice-president of the defendant company, was to the effect that the buildings and track were removed because they were constructed for temporary purposes only and that it was the intention of defendant from the beginning to remove them.

4. Contention is made that the court erred in permitting [9] plaintiff and his witness Graham to testify to the value of the buildings. It appears that there was not any market for the buildings as such, and plaintiff and the witness Graham gave estimates of the value. It was developed that each of these witnesses took into consideration the market price of lumber at Bonner, whereas defendant's witnesses testified that most of the lumber was purchased at a price less than one-half the Bonner market price from some small mills which were operating in the vicinity of the claims.

It is the general rule that if property has a market price at or near the place involved in the controversy, evidence is

properly directed to establish it at that place; but where there are several markets near the place, the nearest market price is not necessarily the only criterion for determining value. The nearest market, if it is fairly illustrative, is usually demanded, and relevancy decreases as distance increases. But nearness is not conclusive where circumstances of variation render the value at the nearest market misleading. Value in the controlling market may always be shown even though that market is a considerable distance away. (22 C. J. 189, 190.) It does not appear just how far Bonner is from the claims; neither does it appear how near the local mills were. Bonner and the claims are in Missoula county, and presumably the mills were in the same county. Under such circumstances courts are very liberal in admitting evidence of value, and no error was committed in this instance. But for a stronger [10] reason defendant cannot complain. The amount of the verdict is conclusive evidence that the jury did not accept plaintiff's testimony as to value, but did make its computation substantially upon the values given by the defendant's witnesses.

5. By appropriate instructions the court withdrew the entire [11] third cause of action, a substantial portion of the second cause of action, and the item of damages for removing the air-hose, but refused defendant's request to withdraw the item of damages for removing the 500 feet of air-pipe. In submitting that item of damages for the jury's consideration we think the court erred.

In 3 Words and Phrases, Second Series, a machine is defined as any "mechanical device or combination of mechanical power or devices to perform some function and produce a certain effect or result." The record discloses that the pipe was securely affixed to the compressor and was not attached to the realty. It was indispensable to the operation of the drills. Without it the compressor was useless, but with it that machine performed its appropriate functions. Under a fair construction of the contract, in the light of the evidence, we

think the pipe was an essential part of the compressor and was removable by the defendant without incurring liability.

6. Finally, it is insisted that the verdict is contrary to the [12, 13] law declared by the court in instructions 10 and 13. In its instruction No. 1 the court in substantially the language employed in *Montana Elec. Co.* v. *Northern Valley Min. Co.*, above, advised the jury as to the rules applicable in determining whether the buildings and track were removable, and the verdict is in complete harmony with that instruction. In instruction 13 the court erroneously told the jury that before plaintiff could recover he must establish by a preponderance of the evidence "that said buildings and improvements above mentioned were erected and placed on the premises of plaintiff by the defendant in such a manner that their removal could not be effected without injury to such premises," and the same error was emphasized to a less extent in instruction 10.

It is the rule in this state and elsewhere generally that the instructions, whether right or wrong, constitute the law of the case so far as the jury is concerned, and a verdict contrary to them is against the law. (*Wallace* v. *Weaver,* 47 Mont. 437, 133 Pac. 1099.) But, in determining whether a verdict is against the law, all of the instructions must be considered, and if the verdict can be justified by any of them, and, on the whole, they are inconsistent and conflicting one with another, the verdict is not against the law. (*Cotter* v. *Butte & Ruby Valley Smelting Co.,* 31 Mont. 129, 77 Pac. 509; *Altoona Q. M. Co.* v. *Integral Q. M. Co.,* 114 Cal. 100, 45 Pac. 1047; 20 R. C. L. 272.)

As indicated above the court erred in submitting to the jury the second cause of action and the item of damages for the removal of the 500 feet of air-pipe, but these errors are subject to correction without a new trial. The utmost that plaintiff could recover upon the so-called second cause of action was $69.75, and the greatest value that could have been given to the air-pipe was $258.70.

The cause will be remanded to the district court, with directions to set aside the judgment and grant a new trial, unless, within twenty days from the date upon which the *remittitur* is filed in the district court, plaintiff agrees in writing filed with the clerk of the lower court that the amount of the judgment shall be reduced to $1,171.55. If such consent be given, the judgment will be modified accordingly as to the date of the original judgment, and, when so modified, will stand affirmed, and each party will pay his own costs of the appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK, concur.