No. 83-27

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

PACIFIC METAL COMPANY,

Plaintiff and Appellant,

-vs-

NORTHWESTERN BANK OF HELENA,
a corp.,

Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Peter G. Meloy, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Philip W. Strope, Helena, Montana

For Respondent:

Patrick Melby, Helena, Montana

Submitted on Briefs: April 28, 1983

Decided: August 5, 1983

Filed: AUG 5 1983

*Ethel M. Harrison*
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a summary judgment in favor of respondent, Northwestern Bank of Helena (Northwestern Bank). We affirm the holding of the District Court of Lewis and Clark County that the Carson Company building is personal property to which a judgment lien of appellant, Pacific Metal Company (Pacific Metal), does not attach.

The issue is whether a building that was constructed on leased real property, pursuant to a lease which required the lessee to remove the building upon termination of the lease, is real or personal property.

Burlington Northern Inc. (Burlington Northern) leased a portion of its right-of-way to Carson Heating & Ventilating, Inc. (Carson Company) on November 1, 1975. The lease authorized Carson Company to construct, maintain and operate a warehouse and office on the leased property. The lease term was indefinite, but the lease provided that either party could terminate the lease at any time upon giving 30 days written notice of termination to the other party.

Paragraph 14 of the lease required Carson Company to remove from the leased premises, prior to the date of termination of the lease, all structures not belonging to the lessor and to restore the premises to substantially their former state.

Pursuant to the stated purpose of the lease, Carson Company constructed a 180' by 55' warehouse and office building on the leased property. The building was affixed to the land by a cement foundation and abutted by cement loading docks.

Commencing in 1971, Northwestern Bank advanced funds to Carson Company and secured its loans with a series of five security agreements, the last of which was dated December 15,

1980. Northwestern Bank perfected its security interest in the building covered by the security agreements by filing a series of financing statements, the last of which was filed January 8, 1981.

As additional security for the bank, on November 1, 1975, Carson Company, Burlington Northern and Northwestern Bank entered into a collateral security agreement by which Burlington Northern consented to an assignment of the lease to Northwestern Bank. The collateral security agreement provided that should title to the chattels and improvements upon the leased premises be taken over by Northwestern Bank in collection proceedings against Carson Company, Northwestern Bank would be bound by all the terms and conditions of the lease.

On June 1, 1981, Pacific Metal obtained a judgment against Carson Company in the sum of $16,232.63. The judgment became a lien upon all real property owned by Carson Company in Lewis and Clark County. Carson Company transferred its interest in the building to Northwestern Bank by a bill of sale on October 31, 1981. The Carson Company building, which is located at 1930 Brady Street, Helena, Montana, was carried on the real property assessment list of the Lewis and Clark County Appraisal Office both before and after it was transferred to Northwestern Bank.

On June 11, 1982, Pacific Metal initiated a declaratory judgment action against Northwestern Bank seeking a district court judgment declaring that the Carson Company building was real property, that Northwestern Bank did not create a security interest in the building, and that Pacific Metal's judgment lien took priority over liens or security interests recorded after June 1, 1981.

Upon both parties' motions for summary judgment, the District Court determined that the building was personal property and that Pacific Metal had no property interest in the building since its judgment lien attached only to real property owned by Carson Company. The District Court granted summary judgment in favor of Northwestern Bank. We affirm.

Montana law defines real property as:

"(1)   land;
 (2)   that which is affixed to land;
 (3)   that which is incidental or appurtenant to land;
 (4)   that which is immovable by law."

Section 70-15-101, MCA. A fixture is a thing affixed to the land when it is:

"(1)   attached to it by roots, as in the case of trees, vines, or shrubs;
 (2)   imbedded in it, as in the case of walls;
 (3)   permanently resting upon it, as in the case of buildings; or
 (4)   permanently attached to what is thus permanent as by means of cement, plaster, nails, bolts, or screws."

Section 70-15-103, MCA. While these two statutes appear to define all buildings resting upon land as fixtures, it is possible for parties to agree that a building is personal property even though it is attached to and resting upon land. Section 70-18-101, MCA provides in pertinent part:

"When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed . . . belongs to the owner of the land unless he chooses to require the former to remove it." (emphasis added)

When additions are affixed to property by a tenant without an agreement allowing him to remove those additions or fixtures, they may not be removed if their removal will damage the premises. Section 70-18-102, MCA; Sanders v. Butte Motor Company (1963), 142 Mont. 524, 385 P.2d 263. Here, an agreement exists specifically authorizing the tenant to construct a warehouse and office building on the premises, and requiring removal of "all structures upon termination of

4

the lease." The terms of the agreement are clear and unambiguous. Unlike in St. Paul Fire & Marine Insurance Co. v. Cumiskey (1983), _____ Mont. _____, _____ P.2d _____, 40 St.Rep. 891, here no conflict in the lease provisions exists.

In Shipler v. Potomac Copper Co. (1923), 69 Mont. 86, 95, 220 P. 1097, 1100, this Court noted:

> "The presumption declared by the [fixture] statute is a disputable one, and may be overcome by evidence which discloses that the building was constructed in such a manner or under such circumstances as to preclude the idea that it was intended to become a part of the realty."

In Shipler, there was a written contract providing that permanent improvements, other than machinery, would become property of the lessor upon relinquishment of the lease. This Court concluded that railroad tracks affixed to the land by the lessee were real property. Lessee failed to overcome the statutory presumption by proving that the parties intended the railroad track improvements should retain their character as personalty.

Unlike the Shipler contract, the Burlington Northern-Carson Company lease clearly authorizes the lessee to remove all structures. Paragraph 14 provides:

> "Upon the date of termination of this lease by notice as aforesaid, or otherwise, Lessee shall surrender said premises to Lessor, and, if not in default hereunder, shall prior to date of termination remove from said premises all structures and property not belonging to Lessor and restore said premises to substantially their former state, and in case of failure so to do, any such structures and property shall become the property of Lessor, or Lessor may dismantle and remove the same and restore said premises to their former state at the expense of Lessee without incurring any liability therefor."

Pacific Metal argues that paragraph 14 gave the Carson Company only a conditional right of removal, and that the character of the structure and the manner in which it was affixed to the land require the court to conclude that the

5

parties contemplated that the Carson Company warehouse would become real property of the lessor.

The statutory definition of fixtures is "merely a rule for general guidance concerning itself more with ultimate than with probative facts." Pritchard Petroleum Co. v. Farmers Co-Op, Etc. (1945), 117 Mont. 467, 474, 161 P.2d 526, 530. This Court has set forth a three-pronged test to determine the status of structures such as the Carson Company building. The character of the structure and the manner in which it is annexed to the realty are factors of lesser weight than evidence of the parties' intent. As held in Grinde v. Tindall (1977), 172 Mont. 199, 201-02, 562 P.2d 818, 820:

> "This Court's cases hold the proper test for determining whether a particular object has become a fixture or not, is said to comprise (1) annexation to the realty, (2) an adaption to the use to which the realty is devoted and (3) intent that the object become a permanent accession to the land. Of these three, the intent of the parties has the most weight and is the controlling factor."

In landlord-tenant situations, whether an improvement is personal property or part of the realty is to be determined by the intention of the parties, as expressed in the lease. Rights between a landlord and tenant with respect to fixtures may be modified, restricted or extended by agreement. 36A C.J.S. Fixtures §15(a) (1961).

Paragraph 14 of the lease agreement constitutes probative evidence that the parties intended the warehouse to retain its character as personalty belonging to the lessee, subject only to the condition precedent that the structure not be removed if lessee were in default under the lease. Although this condition restricts lessee's right of removal, it does not vitiate the parties' express agreement that, absent default, ownership of the structure was to remain in

6

the lessee. The removal provision also evidences the parties' agreement that the warehouse was not to be considered as permanently affixed to the lessor's realty.

The record includes an affidavit of Russell G. Hyatt, Appraisal Supervisor of the Lewis and Clark County Appraisal Office of the Montana Department of Revenue. Mr. Hyatt stated that all buildings, structures, fixtures and improvements erected upon or affixed to land are included on the Real Property Assessment List "without regard to ownership of the improvements, the contractual relationships between the owner of the land and the person placing the improvement upon the land, or whether the improvement becomes part of the realty or remains personalty under the common law." However, Mr. Hyatt explained, when an improvement is owned by a person other than the owner of the land upon which it is situated, the Appraisal Office does not use the legal description of the land, but lists the improvement as it did the Carson Company Building: "NO TITLE MILL BLDG. ON N.P.R.R. R/W, Sec. 23, T. 10 N., R 4 W." Such a listing indicates that the building situated on the Northern Pacific Railroad property is owned by another.

The method by which the property is assessed for purposes of taxation has no bearing on whether the structure is real or personal property. Section 15-7-101, MCA requires the Department of Revenue to maintain classifications and to appraise all improvements. Section 15-1-101(e), MCA defines "improvements" as including "all buildings, structures, fixtures . . . and improvements situated upon, erected upon, or affixed to land." Neither the rules of the common law governing the relationship between the owner of the land and the lessee, nor the intention of the parties as expressed in their contract are controlling in the field of taxation.

7

Annot., 154 A.L.R. 1309, 1323-24 (1945). This is not a taxation case. The law regarding fixtures, rather than tax law, applies.

The District Court properly focused its findings of fact, conclusions of law and order on the fixture issue, relying on the rule stated in Grinde that the intention of the parties is controlling. The Court's finding that the intent of the parties was that the building would be removed whenever the lease was terminated and that, absent default, the building was to retain its character as personalty of the lessee is supported by the substantial evidence of the lease provisions.

Appellant argues that section 30-2-107, MCA requires the owner of a structure situated upon land of another to use the realty recording system so that third parties are not misled. His briefs are not specific as to which contract he believes this section required to be recorded.

Section 30-2-107, MCA permits recording of certain contracts of sale in the realty records. It provides:

"(1) A contract for the sale of timber, minerals or the like or a structure or its materials to be removed from realty is a contract for the sale of goods within this chapter if they are to be severed by the seller but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

"(2) . . .

"(3) The provisions of this section are subject to any third-party rights provided by the law relating to realty records, and the contract for sale may be executed and recorded as a document transferring an interest in land and shall then constitute notice to third parties of the buyer's rights under the contract for sale."

The recording provision in subsection (3) provides a means of preserving the buyer's rights under such a contract of sale. Section 30-2-107, MCA does not apply to the

railroad right-of-way lease because the lease is not a contract for sale as defined by section 30-2-106(1), MCA.

The contract for sale of the building between the Carson Company and Northwestern Bank is not a part of the record in this case. As a result, this Court will not speculate as to whether that agreement falls within the purview of the recording statute.

We hold that the building was intended by the parties to be personal property, that the building remained personal property, and that the judgment lien did not constitute a lien upon that property. We affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9