Tuscaloosa County and the Tuscaloosa County Commission (herein together called the "County") appeal from a judgment rendered acainst them pursuant to a jury verdict in the Circuit Court of Tuscaloosa County. The trial involved three separate cases that had been consolidated because each arose out of the same automobile accident in Tuscaloosa County. These three cases are styled Jeffrey C. Barnett, et al. v. TuscaloosaCounty, et al.; Clyde Barnett, Jr. and State Farm Mutual Aut.Ins Co. v. Tuscaloosa County; and Allstate Ins. Co. v.Tuscaloosa County, et al. Appeals were taken from the judgments in all three cases; the appeal in the first of these three cases was to this Court, and the appeals from the other two were taken to the Court of Civil Appeals. Those two appeals have been transferred to this Court, and the three cases have been consolidated for the purpose of writing one opinion.
The facts of these cases show that an automobile accident involving Jeffrey Barnett and Scott Capell occurred at the intersection of Tierce Patton Road and Old Fayette Road in Tuscaloosa County on February 21, 1987. Tierce Patton Road is a heavily traveled thoroughfare and provides access to Lake Tuscaloosa and to a marina. Old Fayette Road is a less heavily traveled road.
The record in this case reveals that Jeffrey Barnett had been at work with his father, Clyde Barnett, Jr. About 3:30 p.m. on the afternoon of February 21, 1987, Jeffrey and his father went to pick up Jeffrey's car, which had been undergoing repairs. Jeffrey was returning home from this errand when the accident occurred. He turned off Highway 43 onto Tierce Patton Road. He testified that at the point where Tierce Patton Road and Old Fayette Road intersect, the driver's vision was obstructed and that traffic on Old Fayette Road was not visible to drivers on Tierce Patton Road because an old field had "grown up." He stated he was traveling at 35-40 m.p.h. and that it was a clear day. When asked when he first saw the vehicle he collided with, Barnett stated, "Just a second before we hit."
Scott Capell's testimony was limited by the fact that in the accident he suffered a concussion and experienced a loss of memory. However, evidence in the record tends to indicate that Capell approached Tierce Patton Road from Old Fayette Road and traveled through the intersection, colliding with Barnett. It appears that Capell was deceived into thinking that his crossing was safe because a stop sign that was usually present on Old Fayette Road at this intersection was missing and there was no other traffic direction device present. State Trooper Wesley Cartwright investigated the accident and found the stop sign to be missing. Cartwright stated that, in his opinion, the missing stop sign was the sole contributing cause of the wreck. It is clear from the facts that neither driver involved in the accident could see traffic approaching from the other road because of land conditions at the accident scene. Although the missing traffic sign could not be found at the time of the accident, it was found a few days later in a nearby ditch by Sam Hill, the county engineer. The sign was covered by dirt, water, and grass, and it appeared to have been in the ditch for some time. There is evidence to indicate that this particular sign had been knocked down repeatedly over the years and that on each occasion the County had replaced it at the same location in the intersection.
Jeffrey Barnett sued Capell for injuries he received in the accident; Barnett later named the county as a defendant. Clyde Barnett and State Farm then sued Capell and the County for property damage under the subrogation clause of their insurance contract. Capell filed separate answers to these two suits by the Barnetts. Allstate *Page 168 
Insurance Company, pursuant to its subrogation rights under its policy of insurance with Capell, sued the County to recover the money it had paid for Capell's personal injuries and property damage to his vehicle. On April 27, 1988, Jeffrey Barnett moved to consolidate these three cases. The three cases were tried together and all plaintiffs were awarded damages against the County. The Barnetts were awarded $18,000 compensatory damages. Jeffrey Barnett was awarded $20,400 punitive damages on a finding of wantonness on the part of the County. Allstate was awarded $7,393.38 in damages. The jury found for Capell and he is not a party to this appeal.
 ISSUES
The County presents only two issues on appeal. The County first claims that the plaintiffs failed to prove that it had negligently maintained the roadway in question and that its negligence was the proximate cause of the accident. The County next asserts that the plaintiffs failed to prove wantonness. All plaintiffs in this case oppose the County on the issue of negligence. Only Jeffrey Barnett opposes the County on the issue of wantonness. With respect to the negligence issues, the Barnetts, Allstate and State Farm raise the same arguments. Therefore, we will discuss only Barnett's case, because that discussion will sufficiently dispose of those matters.
 NEGLIGENCE
We begin by noting that governmental entities have the exclusive right of control over and responsibility for the maintenance of highways, and, thus, that those entities are subject to a common law duty to maintain roadways in a "reasonably safe condition for their intended use."Jefferson County v. Sulzby, 468 So.2d 112, 114 (Ala. 1985). Counties are bodies corporate pursuant to Code 1975, § 11-1-2, which provides that "[e]very county is a body corporate, with power to sue or be sued in any court of record."
The standard of care required of a county in such a case as this is to remedy defects upon receiving notice of them; notice may be constructive and need not be actual. Sulzby, 468 So.2d at 114. However, the County need use only ordinary and reasonable care to maintain the roadway, and its liability is not the same as that of an insurer. Jacks v. City ofBirmingham, 268 Ala. 138, 105 So.2d 121 (1958).
The evidence in the record supports the jury's finding of negligence. There was evidence to indicate that the stop sign at the intersection at which the accident occurred had been replaced on numerous occasions prior to this accident. Although the County had notice that the sign was likely to be removed with some regularity, there is evidence to indicate that the County always replaced the sign in the same manner at the same location. There is evidence to indicate that the County ignored reasonably available alternatives to a stop sign at this intersection. There is also evidence to show that on the date of the accident, this particular sign had been missing for some time. The county engineer further stated that the County did not follow the Alabama Manual on Uniform Traffic Control Devices. Based upon this evidence, the jury could have found that the County had at least constructive notice of a defect in the roadway and that it negligently failed to cure that defect.
The County contends that an unforeseeable event intervened to cause the accident in this case and thus insulated it from any liability for any negligence in maintaining the sign. The County relies on Vines v. Plantation Motor Lodge,336 So.2d 1338 (Ala. 1976). That case does stand for that proposition, but that proposition has no application in this case, because the event that the County claims was the "intervening cause" was foreseeable. For the Vines proposition to apply, the intervening event must be "not reasonably foreseeable." Id. at 1339. There is evidence in the record to indicate that this stop sign had been knocked down on numerous occasions and that the County had always replaced the sign in the same manner at the same location. After having notice of these prior acts, the County can not reasonably argue that the vandalism in this particular instance *Page 169 
was unforeseeable. Moreover, our cases have held that proximate causation and whether there is an intervening cause are questions for the jury. Liberty National Life Ins. Co. v.Weldon, 267 Ala. 171, 189, 100 So.2d 696 (1957).
 WANTONNESS
Was there evidence of wantonness? This Court has defined "wantonness" as: " 'the conscious doing of some act or the omission of some duty [while] under knowledge of existing conditions and while conscious that, from the doing of such act or the omission of such duty, injury will likely or probably result,' " and this Court has held that " 'before a party canbe said to be guilty of wanton conduct it must be shown thatwith reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the result.' " Roberts v. Brown,384 So.2d 1047, 1048 (Ala. 1980), quoting Lewis v. Zell, 279 Ala. 33, 36,181 So.2d 101 (1965) (emphasis added; citations omitted). See, also, Alabama Great So. R.R. v. Johnston, 281 Ala. 140,199 So.2d 840 (1967); and Brown v. Turner, 497 So.2d 1119, 1120
(Ala. 1986). Moreover, what constitutes wanton conduct depends on the facts of each case. Pate v. Sunset Funeral Home,465 So.2d 347 (Ala. 1984). Plaintiff Jeffrey Barnett is the only appellee in these cases to address the issue of wantonness and punitive damages. His position is that the wantonness count was properly submitted to the jury because, he says, there was a scintilla of evidence to show that the County had notice that the stop sign was missing and yet had failed to act to correct this defect.
Wantonness has often been described in our law. This Court has stated:
 " 'In wantonness, the party doing the act or failing to act, is conscious of his conduct, and without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury.' "
Whitmore v. Burge, 512 So.2d 1320, 1326 (Ala. 1987) (quotingRosen v. Lawson, 281 Ala. 351, 356, 202 So.2d 716, 720 (1967)). This Court has recognized that punitive damages may be recovered from a county due to its wanton failure to maintain a roadway. Elmore County Comm'n v. Ragona, 540 So.2d 720, 727
(Ala. 1989).
The facts of this case, however, simply do not support a finding of wantonness. At best, the plaintiff's evidence tended to show that the County had been made aware that this stop sign was missing on several occasions and that the County had taken prompt steps to replace the sign on those occasions. The County had placed reflectors on the sign to increase its visibility and had unsuccessfully attempted to relocate it. This evidence tends to show only that the County may have been negligent and not that the County acted wantonly. Consequently, the jury's award of punitive damages is invalid. Bradley v. Walker,207 Ala. 701, 93 So. 634 (1922).
Based upon our review of the evidence and the facts in this case, we affirm that part of the trial court's judgment holding Tuscaloosa County liable for negligence in its maintenance of this intersection. We reverse, however, that part of the judgment holding the County liable under Jeffrey's wantonness claim, and judgment is hereby rendered for the County on that issue. The jury's award of punitive damages, therefore, is due to be set aside. The award to Allstate under its subrogation claim is affirmed. The award to Clyde Barnett and State Farm on their subrogation claim is affirmed.
88-413 — AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED.
88-1097 — AFFIRMED.
88-1098 — AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur. *Page 170