The plaintiff Jasmin Bell filed this wrongful-death action based primarily upon the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). The action arose out of an automobile accident that occurred in Barbour County. The plaintiff alleges that that accident occurred when the plaintiff's automobile hit a sagging telephone line. The plaintiff's child, Jasmarie Bell, was killed in the accident. The plaintiff alleges that the telephone line was caused to sag when a pole, which had been manufactured by the defendant T.R. *Page 955 
Miller Mill Company, Inc. ("Miller"), broke.
The action originally included Bellsouth Telecommunications (the owner of the telephone pole) and other defendants, but this appeal involves only the plaintiff and the defendant Miller. Trial was commenced before a jury, but the court granted Miller's motion for a directed verdict at the close of the plaintiff's case. The plaintiff appeals from the resulting judgment for Miller.
The facts relevant to this appeal are as follows: On August 12, 1995, Jasmin Bell and her two children, Jasmarie and Jason, were traveling north on U.S. Highway 431 near Eufaula. Immediately before Bell passed the intersection of U.S. Highway 431 and Alabama Highway 131 (Bakerhill Highway), Jeffrey Bertelson stopped his van at the Beeline convenience store located at the southwest corner of that intersection. Bertelson parked his van on the crest of a hill by a fuel island and went inside the store. The van rolled down the store's sloping driveway, toward Highway 131; it crossed Highway 131 and struck a guy-wire attached to a telephone pole. The guy-wire on the telephone pole either was severed or broke loose from the pole, and the pole broke. When the pole broke, the telephone lines sagged down over Highway 431 to a level of approximately 9 1/2 feet above the road. A recreational vehicle (RV) traveling south on Highway 431 struck the lines, causing the lines to loop forward, upward, and over the RV (by a "jump rope effect"). After the lines cleared the RV, they dropped back down to a level of approximately one foot above the road. At this time, Bell's car, which was approaching the intersection, struck the low-lying lines. The lines lifted Bell's car into the air, and the car then came down on its back bumper and came to rest upside down in the highway. Jasmarie Bell was ejected from the car during the accident and died as a result.
Jasmin Bell, as the mother of Jasmarie, filed this action on January 9, 1996, in the Circuit Court of Barbour County. An amended complaint added Miller as a defendant. Against Miller she stated claims of negligent or wanton manufacturing and marketing of the telephone pole, alleging that, as a direct and proximate consequence of the negligence or wantonness, Miller's acts combined and concurred with the other defendants' acts to cause the wrongful death of Jasmarie Bell. Bell also based her wrongful-death claim against Miller on the AEMLD, alleging that the telephone pole had been defective and unreasonably dangerous and that as a result of its defective and unreasonably dangerous nature her daughter Jasmarie had been killed.[1]
At the close of Bell's case, Miller filed a "Motion for a Directed Verdict at the Close of the Plaintiff's Case." After holding a hearing on Miller's motion, the trial court granted it.
Bell appeals from the resulting judgment for Miller. She presents five issues for review: (1) Whether a telephone or utility pole, despite having been installed in the ground, is a "product" for purposes of the AEMLD; (2) whether Bell offered substantial evidence to prove liability under the AEMLD; (3) whether Bell offered substantial evidence to prove her negligence or wantonness claim; (4) whether the evidence before the court at the close of Bell's evidence was sufficient to support a ruling that Miller was entitled to a judgment as a matter of law based upon its affirmative defense of "intervening cause"; and (5) whether the trial court erred in precluding Bell from offering into evidence a quality-control memorandum that was prepared for Miller and which Bell alleged *Page 956 
related to the defect that she says caused the pole to break.
The primary issue presented in this case is whether the plaintiff met her burden of presenting substantial evidence to prove her claims against the defendant Miller.
In addressing this issue, we restate the rules that govern our review. An appellate court, when reviewing a ruling on a motion for a judgment as a matter of law,[2] uses the same standard the trial court used initially in granting or denying the motion. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present "substantial evidence" in order to withstand a motion for a judgment as a matter of law. See § 12-21-12, Ala. Code 1975; Westv. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury.Carter, supra, at 1353. In reviewing a ruling on a motion for a judgment as a matter of law, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw.Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling.Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992).
 I.
We first consider whether a telephone pole that has been installed in the ground is a "product" for purposes of the AEMLD. Miller, citing Wells v. Clowers Constr. Co., 476 So.2d 105 (Ala. 1985), argues that, because the telephone pole was installed in the ground and was securely attached to the land, it was a structural improvement and, as such, cannot be classified as a "product" for purposes of the AEMLD. Miller recognizes that the Court of Civil Appeals, in Thornton Properties v. Alabama PowerCo., 550 So.2d 1024, 1025-26 (Ala.Civ.App. 1989), held that the utility poles in question in that case were personal property, not fixtures, but it states that the opinion in Thornton Properties
"is inconsistent and in conflict with the holding of this Honorable Court in Wood Preserving Corp. v. State Tax Commission,235 Ala. 438, 179 So.2d 254 (1938)." The plaintiff states that since it decided the Wells case this Court has decided several cases, under the AEMLD doctrine, that involved products that had a more permanent connection to real estate than did the telephone pole in this case. She cites Beam v. Tramco, Inc., 655 So.2d 979
(Ala. 1995) (involving a conveyor belt installed in a grain-storage facility); Sears, Roebuck Co. v. Harris,630 So.2d 1018 (Ala. 1993) (gas water heater in a home); McDaniel v.French Oil Mill Mach. Co., 623 So.2d 1146 (Ala. 1993) (cylindrical rotary soybean conditioner located in a soybean extraction facility); and King v. S.R. Smith, Inc., 578 So.2d 1285 (Ala. 1991) (diving board that had been installed with an in-ground, vinyl-lined swimming pool).
Although we note that a number of jurisdictions adhere to the general rule upon which Miller's argument is based, namely that structural improvements to real property are not considered products for purposes of products-liability actions,[3] *Page 957 
we believe that a review of our cases applying AEMLD law involving products that have been affixed to real property shows that the policies underlying the application of the AEMLD doctrine have little relation to the policies underlying the fixtures doctrine, and that the application of products- liability law should not be totally dependent upon the intricacies of real-property law. Consequently, based upon the facts of this case, we hold that, although the telephone pole here was installed in the ground and was attached to the property, it did not by that fact lose its character as a "product" for purposes of the AEMLD.[4] Cf.Pamperin v. Interlake Companies, Inc., 634 So.2d 1137, 1140
(Fla.Dist.Ct.App. 1994) (holding that, as a matter of law, a storage-rack system attached to real property is a "product" for purposes of a products-liability action); Wireman v. KenecoDistribs., Inc., 75 Ohio St.3d 744 [75 Ohio St.3d 103], 747,661 N.E.2d 744, 747 (1996) (holding that, based upon the statutory definition of "product," an item must be personal property before it can fall within the realm of products-liability law); and Pacific Metal Co. v. Northwestern Bank of Helena,205 Mont. 323, 327, 667 P.2d 958, 962 (1983) (holding that a building constructed on leased real property pursuant to a lease was personal property).
 II.
The next issue Bell raises is whether she presented substantial evidence to substantiate her products-liability claim. In order to establish liability under the AEMLD, the plaintiff must show that an injury was caused by one who sold a product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer; that the seller was engaged in the business of selling such a product; and that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold. Sapp v. Beech Aircraft Corp.,564 So.2d 418 (Ala. 1990). Furthermore, the burden of proof rests with the plaintiff to prove that the product left the defendant's control in an unreasonably dangerous condition and not fit for its expected use, and that that which caused the product to be in such an unfit condition in fact caused the injury.Sears, Roebuck Co. v. Haven Hills Farm, Inc., 395 So.2d 991,995 (Ala. 1981).
Viewing the evidence in the light most favorable to the plaintiff, and entertaining such reasonable inferences as the jury would have been free to draw, we conclude that there is a factual question as to whether the telephone pole in question left Miller's control in an unreasonably dangerous condition and whether the defects, if any, were in fact the cause of Jasmarie's death. See Lemond Constr. Co. v. Wheeler, 669 So.2d 855, 862
(Ala. 1995) (stating that it is well established that the question of proximate cause is almost always a question of fact to be determined by the jury and that the question must go to the jury if reasonable inferences from the evidence support the plaintiff's claim); *Page 958 Tuscaloosa County v. Barnett, 562 So.2d 166, 169 (Ala. 1990) (holding that questions of proximate causation and intervening cause are questions for the jury); and Cain v.Sheraton Perimeter Park South Hotel, 592 So.2d 218, 221 (Ala. 1991) (holding that the question of proximate cause is a question of fact to be determined by the jury). Based upon the record, we hold that the plaintiff Bell, who bore the burden of proof, produced substantial evidence creating a factual dispute requiring resolution by the jury. Dr. Philip Opsal, one of Bell's expert witnesses, testified that the pole in question contained various defects, such as decay and bursts.[5] He also stated that these defects were "pre-treatment defects," meaning that they had been present in the pole while it was being treated, or manufactured, by Miller. Dr. Opsal further stated that decay had been detected in the zone of the break, or the area of the pole where the break occurred. Mr. Ray Arms, another of Bell's expert witnesses, stated that if the pole in this case had been sound, then "in this specific application at this specific location [it] should never have fallen." Given this testimony, it was error for the trial court to grant Miller's motion for a judgment as a matter of law as to Bell's AEMLD claim. Our holding does not preclude Miller from proving its affirmative defenses of lack of causation and intervening cause. We merely hold that it was error for the trial court to remove the AEMLD claim from the jury.
 III.
Bell next argues that the trial court erred in granting Miller's motion for a judgment as a matter of law as to her negligence or wantonness claims. Miller contends that Bell failed to produce substantial evidence as to two elements of her negligence claim: (1) breach of duty; and (2) proximate cause. We disagree.
Viewing the facts in the light most favorable to Bell, we conclude that the trial court erred in granting Miller's motion for a judgment as a matter of law as to Bell's negligence claims. As indicated by the facts we set out in Part II, Bell produced substantial evidence that creates a factual question to be determined by the jury, namely whether Miller negligently manufactured the telephone pole in question and, if so, whether the negligence in manufacturing the pole was the proximate cause of Jasmarie's death. Bell also produced substantial evidence, through the testimony of Phillip Opsal and Dr. Frank Telewski, that raises a factual question regarding her claim of negligent inspection by Miller. Therefore, the judgment as a matter of law in favor of Miller on these negligence claims was improper.
We further conclude that the trial court did not err in entering a judgment as a matter of law in favor of Miller on Bell's wantonness claim. Bell failed to produce substantial evidence in support of that claim.
 IV.
The fourth issue Bell presents for review is whether the evidence before the trial court at the close of Bell's evidence was sufficient to support a ruling that Miller was entitled to a judgment as a matter of law based upon its affirmative defenses of intervening cause and lack of causal relation. We have determined, in Part II, supra, that it was improper for the trial court to grant Miller's motion for a judgment as a matter of law because we concluded that the issues of proximate cause and intervening cause were questions for the jury. See TuscaloosaCounty v. Barnett, supra (holding that questions of *Page 959 
proximate cause and intervening cause are questions for the jury). Therefore, we pretermit a discussion of this issue.
 V.
The final issue is whether the trial court erred in precluding Bell from offering a quality-control memorandum by Miller into evidence. The memorandum was prepared by Joey Pate, Miller's quality-control manager.[6]
Bell argues that the trial judge erred in excluding this evidence because, she says, it was relevant to show a "pattern and practice of misconduct" on the part of Miller. On the other hand, Miller contends that the trial judge properly excluded the memorandum because, it says, Bell failed to lay the proper predicate for its admission and failed to show that the memorandum was created on a date reasonably contemporaneous to the date that the pole in question was treated, or manufactured, by Miller. Miller also asserts that the trial judge properly excluded the Pate memorandum because, Miller says, it was cumulative of copies of other inspection audits that the trial judge allowed Bell to introduce.
There is a dispute as to the exact year when the Pate memorandum was created. Bell argued that the memorandum was created in January 1989. However, Pate testified at a deposition that he published the memorandum in January 1988. Bell's counsel assured the trial judge that he could prove that the memorandum was created in 1989. The trial judge conditioned the admission of the memorandum on Bell's counsel's being able to show that the memorandum was created more recently than January 1988. The trial judge reasoned that if the memorandum was created in 1988, it would be too remote to be probative as to alleged defects in a pole treated by Miller in late 1989.
Rulings on the admissibility of evidence are within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion. Bama's Best Party Sales, Inc.v. Tupperware, U.S., Inc., 723 So.2d 29 (Ala. 1998). Based upon the facts of this case, we find no abuse of discretion in the trial judge's excluding the Pate memorandum. Bell's counsel assured the trial judge that he could show that the memo was created more recently than 1988. The trial judge conditioned the memorandum's admissibility on Bell's counsel's being able to establish that the memo was created later than 1988, but the record does not indicate that Bell's counsel established that. Also, the memorandum was cumulative of other evidence that was admitted.
 VI. Summary
We conclude that the telephone pole at issue in this case was a "product" for *Page 960 
purposes of the AEMLD. Based upon that conclusion, we hold that it was error for the trial court to grant Miller's motion for a judgment as a matter of law on Bell's AEMLD and negligence claims. We conclude that the trial court properly entered the judgment as a matter of law in favor of Miller on Bell's wantonness claim. We further conclude that the trial court did not abuse its discretion in excluding the Pate memorandum, based upon the facts shown in this record. Therefore, the judgment of the trial court is affirmed insofar as it relates to Bell's wantonness claim. The judgment is reversed insofar as it relates to Bell's AEMLD and negligence claims, and the cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COOK, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
HOUSTON, J., recuses himself.
[1] Bell also alleged that she and her son Jason had suffered severe and permanent injuries as a result of the accident, and she sought damages based on those injuries. Pursuant to a stipulation of the parties, the trial court dismissed Jason and Jasmin Bell's personal-injury claims against Miller. Consequently, the only issue tried before the jury was the claim against Miller alleging the wrongful death of Jasmarie Bell.
[2] Miller filed a "motion for a directed verdict." However, effective October 1, 1995, Rule 50, Ala.R.Civ.P., was amended, as a matter of form only, so as to rename "motions for directed verdict" and "motions for judgment notwithstanding the verdict" as "motions for judgment as a matter of law."
[3] See Easterday v. Masiello, 518 So.2d 260 (Fla. 1988) (jail facility); Pennington v. Cecil N. Brown Co., 187 Ga. App. 621,622, 371 S.E.2d 106, 107 (1988) (church parking lot); Moore v.Jesco, Inc., 531 So.2d 815, 817 (Miss. 1988) (steel poultry houses); Scott v. Missouri Inv. Trust, 753 S.W.2d 73, 74 (Mo.App. 1988) (common stairway of apartment building); Begay v.Livingston, 99 N.M. 359, 367, 658 P.2d 434, 442 (1981) (building, parking ramp, and parking space); and Cox v. Shaffer, 223 Pa. Super. 429,431, 302 A.2d 456, 457 (1973) (silo).
[4] Although the trial judge did not specifically state his reasons for granting the motion for a directed verdict, it appears that it was not because he thought the plaintiff could not maintain an AEMLD action against Miller. It appears to us that he based his ruling on a belief that, given the facts and circumstances of the case, the plaintiff had failed to prove proximate causation. When he granted the motion he stated, in part:
 "I think the jury would have to suppose or assume some facts for them to make the leap to find against T.R. Miller. . . . I don't think they should have to do that. I think the plaintiffs have not met their burden of proof, and I hesitate to make this ruling, but I think it is the right ruling."
[5] Dr. Opsal explained that a "burst" is a condition that may occur in a pole during the kiln-drying process. He pointed out that during this process, a pole is placed in a kiln and exposed to heat to reduce the moisture content so that the oil or preservative being used to treat the pole can successfully penetrate the wood. If the temperature in the kiln becomes too high, pockets of water within the pole develop into steam and may damage the wood fiber, resulting in the condition referred to as a "burst."
[6] The memorandum reads, in part:
 "We have made another and hopefully beneficial change to address repeated deficiencies through the framing operation. Joel Sullivan came on the seventh of January on a normal quality audit of our plant operations. The quality audit of the storage yard revealed numerous deficiencies of repeated nature. The defects were: decay in the butts of poles, improper brands, bark on the lower half of poles, and compression wood. This is regretful as to the magnitude of discovered defects.
 "The immediate corrective action: The framing foreman was confronted as to his action to make a change in the framing operation.
 "A. The framing deck will be slowed down to a setting of one or two, to allow time for completion of job.
 "B. Assign a man at butt of poles to be responsible for bark removal, check placing of butt brand and also check pole decay.
 "C. Framing foreman will assume a position at the top of the poles and place the hammer mark in the top of pole after it meets all specifications. He will keep a good record of operation on a charge basis.
 "It is our responsibility to turn out a quality pole to all customers and hopefully this action will bring about more consistency during the production of a pole.
 Joseph Pate, Jr. "Q.C. Manager."